(No. 32578.—

EVELYN FREYMARK *et al.,* Appellants, *vs.* OTTO F. HANDKE *et al.,* Appellees.

*Opinion filed May 20, 1953—Rehearing denied September 21, 1953.*

EDWARD H. ENRIGHT, and HERMAN HERSON, both of Chicago, for appellants.

JOHN P. DERNING, and OTTO M. HAMER, both of Chicago, (CHARLES D. SNEWIND, of counsel,) for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is an appeal from a decree of the superior court of Cook County wherein plaintiffs' complaint seeking certain equitable relief was dismissed. Plaintiffs and defendant Otto F. Handke are the surviving children of the decedent, Dr. Otto K. Handke. Dr. Handke died June 7, 1943, at the age of 78. All the sisters have joined as plaintiffs in a suit seeking to set aside a certain deed, three notes and two trust deeds; other relief requested was for discovery, accounting and partition of other real estate.

Three parcels of real estate are involved herein: Parcel No. 1, located in River Forest, is a brick residence built by the doctor in 1923; at the time of his death this parcel was encumbered by an $8,500 mortgage and also a junior mortgage for $3,500 made by the doctor April 1, 1943, and delivered to his son; a probate court sale in 1947 brought $24,000 for this parcel. Parcel No. 2, located in Forest Park, consisted of a two-story brick building and a one-story building; the doctor purchased this parcel for $5,000 in 1898; it had two stores, and an apartment which was occupied by him as his office and residence until 1924; he encumbered this parcel with a $25,000 mortgage in 1927, which was regularly reduced to $15,520 in April 1942; March 8, 1943, the doctor conveyed it to his son and wife. Parcel No. 3, located in River Forest also, was purchased by the doctor and his son in 1924; as tenants in common they improved it with a filling station and store buildings; on an original price of $30,000 the down payment was $12,500 in cash and it was mortgaged for the balance of $17,500. The parties stipulated that as to this last parcel one half was owned by plaintiffs and the other half was owned by their brother and his wife, the defendants. A $5,500 junior mortgage on parcel No. 3 was cancelled in 1946 when the son and his wife completed payment to a certain bondholder on parcel No. 2.

Plaintiffs alleged that their father was in ill-health, suffering from senility and infirmity due to advanced age, arteriosclerosis and uremic poisoning, and was unable to comprehend or transact business matters for a period of a year prior to his death, and that during this time his son took care of all his business. The son is charged with making misrepresentations to the father while a confidential relationship existed and while he was acting in a fiduciary capacity. It is charged that he thereby acquired title to parcel No. 2 without consideration, and also obtained without consideration a note made by the son to the father,

having a balance due in the amount of $3,200.91, and it is further charged that the father also executed and delivered a note and mortgage on parcel No. 1 for $3,500 to his son. The amended answer denied the charges of the father's incompetency, the existence of a fiduciary relation, fraud and undue influence. Defendants, further answering, alleged good and sufficient consideration for all the transactions involved and charged plaintiffs with *laches*.

The decree, in confirming the master's report, found that neither fraud, breach of fiduciary relationship nor incompetency of the deceased was established; that the conveyance of parcel No. 2 was supported by good and valuable consideration that also benefited plaintiffs; that plaintiffs knowingly stood by for six years and permitted defendants to expend large sums of money in improvements on this parcel. As to the points in issue the complaint was dismissed for want of equity. Plaintiffs now urge in this court that the lower court's decree is based on erroneous conclusions as to the law involved and upon erroneous factual findings. Appellants, Evelyn Freymark, Edna Ketelhut, Alfreda Bolduan, and Irene Hansen are herein referred to as plaintiffs, and appellees, Otto F. Handke and Catherine S. Handke, as defendants.

Plaintiffs attempt to create a fiduciary relationship between the father and son based on the fact that at one time there existed an oral partnership arrangement between them respecting parcel No. 3. The evidence clearly revealed that this arrangement was terminated by a written dissolution of partnership. Nor is the blood relationship of any consequence as to this issue. A fiduciary relationship between parent and child does not exist as a matter of law, but must be established by evidence. (*O'Malley* v. *Deany,* 384 Ill. 484.) It is apparent that the aged father here was not under the domination of his son; in fact he lived with one of the plaintiffs for five years preceding his death. He also consulted with other persons concerning the transactions

concerning parcel No. 2 shortly before his death. Plaintiffs insist that the collection of certain rents by the son created a principal-and-agent relationship and this in law made him a fiduciary. This conclusion is not based on the evidence in this case. It is also claimed that by original answer defendants admitted fiduciary relationship. The amended answer denied existence of unlimited confidence and denied that the legal concept, fiduciary relationship, existed. It is fundamental that the filing of an amended pleading operates as an abandonment of the original pleading it supersedes. (*Board of Education* v. *City of Chicago,* 402 Ill. 291.) It is also noteworthy that a reading of the original answer does not admit of the conclusion plaintiffs attach to it and therefore the original verified answer does not amount to an admission within the rule announced in *Blakeslee* v. *Blakeslee,* 265 Ill. 48. It became incumbent on plaintiffs to prove the existence of the alleged fiduciary relationship by clear and convincing evidence. (*McGlaughlin* v.*Pickerel,* 381 Ill. 574.) This plaintiffs have failed to do.

Certain charges of fraud are made concerning the son's conduct in obtaining the transfer of parcel No. 2 to himself and his wife. A review of the facts as disclosed by the record in this case reveals quite the contrary. Not only was the father fully informed as to the transaction and its details, but plaintiffs were given the same information and they not only assented but believed it was a benefit to all of them. At the time of the transfer, there existed reasonable and good grounds for believing there was no equity in this parcel over and above the mortagage debt. In fact, competent appraisal and good-faith efforts to sell indicated its value was considerably less. Appraisals of $8,000 and $10,000 and futile attempts to sell for $10,000 in 1942 and 1943, the deteriorated condition of the building, several vacancies of business premises in the neighborhood, low rental income of the property, and the possibility of a foreclosure suit and deficiency decree, were all

factors testified to and well known to all the plaintiffs and their father. Any charges of fraud or undue influence have collapsed by virtue of the evidence of full and fair disclosure. It therefore follows that even had there existed a fiduciary relationship between the father and son, the fact that the transfer did not proceed from fraud or undue influence and was in fact a voluntary and fair transaction will prevent an attempt to set it aside. *Stone* v. *Stone,* 407 Ill. 66.

The strongest testimony of plaintiffs in respect to the father's alleged mental incompetency was that of Dr. Cooper, a physician who first treated the father in April, 1942, in the hospital. Decedent there had a prostatic resection, and after leaving the hospital Dr. Cooper stated he saw him twice a week and decedent was suffering from azotemia hypertension and generalized arteriosclerosis which affected his brain. After giving a detailed description of his observations, this witness stated that in his opinion the decedent was of unsound mind from April 30, 1943, until his death. The deed in question, however, was executed March 8, 1943. Another doctor, testifying for defendants, stated decedent not only was of sound mind during this period but exceptionally alert for one of his age. Lay witnesses on each side testified *pro* and *con* on this issue of incompetency. Where a master saw and heard witnesses testify, his findings are entitled to great weight in determining the credit to be given the testimony, and such findings, when approved by the chancellor, will not be disturbed unless manifestly against the weight of the evidence. (*Bydalek* v. *Bydalek,* 396 Ill. 65; *Brubaker* v. *Hatjimanolis,* 404 Ill. 342.) In addition to the presumption of competency of the grantor, it appears that in this case he was familiar with the transaction, including its details, and understood its nature, character and extent. His physical disabilities and infirmities were merely coincident with his advanced age.

We are of the opinion that the lower court was correct in finding good and sufficient consideration passed to the grantor. Taking parcel No. 2 at $10,000, (a value agreed upon by the parties in a proposed prior transaction,) the giving of the $3200.91 note to the son and also the execution and delivery of the $3500 note and mortgage on parcel No. 1 to the son are readily understandable, since the son and his wife assumed an indebtedness of $15,520 and, in addition, expended other money in the refinancing. It was admitted and stipulated by the parties that the actual indebtedness, plus interest and cost of securing a release was in excess of $17,000. Decedent's daughter Evelyn Freymark is also executrix of his estate. In the inventory filed October 28, 1943, in said estate she failed to include parcel No. 2. The inventory also refers to the $3200.91 note, stating it had come "into the possession of the maker who claims it was paid during the lifetime of the decedent. The amount that can be realized thereon is doubtful." Plaintiffs have stood by for six years, allowed defendants to expend more than $13,000 in improvements and have made no offer of reimbursement. Now that the property has been improved, enhanced in value and yields a much greater rental income, plaintiffs beseech equity for relief. It is idle to contend here that plaintiffs had no knowledge of the conveyance of parcel No. 2 six years before filing suit. We cannot agree with plaintiffs' contention that the doctrine of *laches* has no application here. The exact number of years which have elapsed is not the controlling element. *Laches* depends on whether, under all the circumstances of the particular case, plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. It has been defined to be such a neglect or omission to assert a right, taken in conjunction with lapse of time of more or less duration, and other circumstances causing prejudice to an adverse party, as will operate as a bar in a court of equity. Where there is such a change in the rela-

tions of the parties or such a change in the subject matter of the suit as to render it inequitable to grant relief, it will be refused without reference to the statutory period of limitation. (*McKey* v. *McKean,* 384 Ill. 112, 126.) We believe the defense of *laches* was properly established here by the defendants under the principles announced in the *McKey case*. In the latter case, the period of time involved was only four years.

From a careful examination of the record, it is our opinion that the lower court was correct in its decree of dismissal as to the controverted issues hereinabove discussed. We are also of the opinion that the master's fees in this case were reasonable, in view of the large record, time required and the issues involved.

The decree of the superior court of Cook County is affirmed.

*Decree affirmed.*